IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **BRITTANY PEPPELMAN,** | |
| **Plaintiff,** | **Civil Action No.:** _____ |
| vs. | |
| **CHRISTIAN HEATING AND AIR CONDITIONING, LLC** | **JURY TRIAL DEMANDED** |
| and | |
| **MORVENT AIR CONDITIONING AND HEATING, LLC,** | |
| **Defendants.** | |

## COMPLAINT

Plaintiff Brittany Peppelman, by and through her attorneys, Bell & Bell, LLP, hereby files the following Complaint and Jury Demand ("Complaint").

### PRELIMINARY STATEMENT

1. This is an action for an award of damages, punitive damages, attorneys' fees and other relief on behalf of Brittany Peppelman, a former employee of Defendants Christian Heating and Air Conditioning, LLC and Morvent Air Conditioning and Heating, LLC (hereinafter collectively "MoreVent/Christian" or "Defendants"). Ms. Peppelman has been harmed by Defendants' harassment and discrimination on the basis of her sex and was wrongfully terminated and retaliated against for reporting her concerns of illegal and/or criminal activity and for refusing to engage in what she perceived to be illegal activity by MoreVent/Christian including violations of overtime laws, failure to observe

COVID-19 regulations, and MoreVent/Christian's willingness to engage in conflicts of interest.

2. This action is brought pursuant to Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000(e) et seq. ("Title VII"), the Fair Labor Standards Act, 29 U.S.C. §215(a)(3) ("FLSA"), and the common law of the Commonwealth of Pennsylvania.

**JURISDICTIONAL STATEMENT**

3. This Court has original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States pursuant to 28 U.S.C. §§ 1331 and 1391.

4. The jurisdiction of this Court is also invoked pursuant to 28 U.S.C. § 1343(4), which grants the District Court original jurisdiction in any civil action authorized by law to be commenced by any person to recover damages to secure equitable or other relief under any act of Congress providing for the protection of civil rights.

5. All conditions precedent to the institution of this suit have been fulfilled. On April 29, 2021, Plaintiff timely filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), which was dual-filed as a Complaint with the Pennsylvania Human Relations Commission ("PHRC"). On May 18, 2021, the EEOC issued a Notice of Right to Sue to Plaintiff. This Complaint has been filed within ninety (90) days of Plaintiff's receipt of said Notice.[1]

---

[1] Plaintiff dual-filed her Charge of Discrimination as a Complaint with the PHRC on April 29, 2021, less than one year ago, for Defendants' violations of the Pennsylvania Human Relations Act, 43 P.S. § 951, et seq. ("PHRA"). Ms. Peppelman intends to seek leave to amend her Complaint to add her PHRA claims once it has been more than one year since she dual-filed her EEOC Charge as a Complaint with the PHRC.

**VENUE**

6. This action properly lies in the Eastern District of Pennsylvania, pursuant to 28 U.S.C. § 1391(b).

7. This action properly lies in the Eastern District of Pennsylvania because the claims and significant activities associated with those claims arose in this judicial district, and Plaintiff was employed by and terminated by Defendant in this judicial district.

**PARTIES**

8. Plaintiff Brittany Peppelman ("Ms. Peppelman") is an adult female citizen and resident of East Norriton, Pennsylvania and the United States of America.

9. Defendant Christian Heating and Air Conditioning, LLC ("Christian") is a Pennsylvania company with its principal place of business at 1320 Industrial Highway, Southampton, Pennsylvania 18966, where Ms. Peppelman was employed.

10. Defendant Morvent Air Conditioning and Heating, LLC ("MoreVent") is a Pennsylvania company with its principal place of business at 1041 Andrew Drive, West Chester, Pennsylvania 19380. MoreVent did and continues to do business using the fictitious name MoreVent Heating, Cooling & Plumbing. Ms. Peppelman worked for MoreVent/Christian at Defendants' location at 1320 Industrial Highway, Southampton, Pennsylvania 18966.

11. At all relevant times, employees of Defendants acted as agents and servants for Defendants.

12. At all relevant times, employees of Defendants were acting within the scope of their authority and in the course of employment under the direct control of Defendants.

13. At all times material hereto, Defendants acted by and through their

3

authorized agents, servants, workmen and/or employees acting within the course and scope of their employment with Defendants and in furtherance of Defendants' business.

14. This cause of action arose out of transactions or occurrences that took place in whole or in part in Bucks County, Pennsylvania.

15. At all times relevant hereto, Plaintiff Brittany Peppelman was an "employee" of Defendants within the meanings of the laws at issue in this suit and is accordingly entitled to the protections of said laws.

16. At all times relevant hereto, Defendants each acted as Plaintiff's "employer" within the meaning of the laws at issue in this suit and is accordingly subject to the provisions of said laws.

17. This cause of action arose out of transactions or occurrences that took place in whole or in part in the Eastern District of Pennsylvania.

18. Defendants each were and are business entities that do significant business within the Commonwealth of Pennsylvania

19. Venue is appropriate in this Court.

20. This Honorable Court has personal jurisdiction over the Defendants.

**FACTS**

21. Beginning on September 25, 2020, Ms. Peppelman was employed as the Human Resources Director ("HR Director") at Morvent Air Conditioning and Heating, LLC, which includes Christian Heating and Air Conditioning, LLC, formerly named CHVAC Target LLC.

22. While employed by MoreVent/Christian, Ms. Peppelman performed all her duties in an excellent, hardworking, and dedicated manner.

4

23. Despite her loyalty and consistent performance, Ms. Peppelman was subjected to discrimination and harassment on the basis of her sex and wrongfully terminated as a result of such discrimination and in retaliation for objecting and refusing to engage in violations of overtime laws including the FLSA, Pennsylvania Minimum Wage Act, and other laws.

24. Ms. Peppelman worked for CHVAC Target LLC as a Human Resources Manager until MoreVent/Christian acquired CHVAC Target LLC.

25. After the acquisition, MoreVent/Christian retained Ms. Peppelman and promoted her to HR Director.

26. During her employment with MoreVent/Christian as HR Director, Ms. Peppelman observed practices at MoreVent/Christian that she believed to be illegal and/or wrongdoing, including violations of overtime laws, failure to observe COVID-19 regulations, and MoreVent/Christian's engagement in conflicts of interest with respect to investment advice and Defendants' 401(k) Plan.

27. Ms. Peppelman learned that MoreVent/Christian did not properly calculate non-exempt employees' overtime pay rate.

28. MoreVent/Christian did not properly account for additional pay in determining overtime for its employees.

29. Ms. Peppelman reminded the owners of MoreVent/Christian that employees' weekly hourly rate had to be recalculated when there is additional pay to determine the overtime pay rate, and that any hours worked in excess of 40 hours is subject to overtime pay.

30. However, the owners refused to recalculate the weekly pay rate and said

5

that they did not care whether or not it was legal, and that as long as it motivates employees and helps the bottom line, they would do what they needed to do.

31. Ms. Peppelman explicitly told the owners that she did not feel comfortable doing payroll if they chose to continue this practice.

32. She continued to urge the owners to abide by overtime laws, suggesting that they speak with an attorney to find a way to incentivize employees legally.

33. Ms. Peppelman indicated that she had previously consulted with an employment attorney who had informed her that the overtime practices were illegal.

34. The owners responded that they were the owners and they would do what they wanted.

35. Ms. Peppelman objected and said that she refused to engage in anything unethical or illegal.

36. It is Ms. Peppelman's belief that MoreVent/Christian's payroll practices were unlawful and/or against federal and Pennsylvania wage and overtime laws.

37. Ms. Peppelman also observed that MoreVent/Christian was not executing precautions that complied with COVID-19 regulations.

38. MoreVent/Christian had a travel ban policy in place based on Pennsylvania Governor Tom Wolf's guidelines that employees could not travel to states enumerated on a travel ban list.

39. Employees were expected to inform Ms. Peppelman if they were planning to travel out of state.

40. Ms. Peppelman learned that one of the owners of MoreVent/Christian had traveled to a state on the ban list without informing Ms. Peppelman.

41. Ms. Peppelman approached the owner and reminded him about the travel ban and told him that he would need to quarantine for fourteen (14) days, as required by the state, before returning to work.

42. The owner said that he was the owner and was going to go into work anyway, and that Ms. Peppelman could not enforce the policy.

43. Ms. Peppelman explained that it was a safety violation and could potentially become a legal issue if he brought COVID-19 into the office.

44. The owner agreed, but said that he knew plenty of individuals in Human Resources who thought Ms. Peppelman was being ridiculous and could not implement the COVID-19 travel ban policy.

45. Ms. Peppelman's efforts to enforce company policies and ensure MoreVent/Christian was in compliance with regulations were repeatedly rebuffed during her employment with MoreVent/Christian.

46. In addition, Ms. Peppelman raised concerns about possible conflicts of interest that was arising at MoreVent/Christian.

47. One of the owners of MoreVent/Christian told Ms. Peppelman and her employees as they were reviewing 401(k) paperwork that he was available to help them pick stocks and could provide financial information and assistance.

48. Ms. Peppelman noticed that the owner of MoreVent/Christian had ownership in the 401(k) brokerage company.

49. Ms. Peppelman confronted the owner, telling him that she believed that giving employees advice on what stocks to invest in and other financial advice creates a conflict of interest given his ownership in MoreVent/Christian and in the 401(k) brokerage

company.

50. The owner insisted that what he was doing was legal, but when Ms. Peppelman later referred an employee to the owner for 401(k) guidance, the owner declined to help the employee, thereby validating Ms. Peppelman's concerns that a conflict of interest was transpiring at MoreVent/Christian.

51. MoreVent/Christian furthermore actively fostered a work environment that was leading its employees to develop medical problems.

52. Another female employee of MoreVent/Christian experienced severe work-related anxiety and stress, which resulted in the employee being compelled to go to the hospital after suffering panic attacks, diagnosed to be a result of work-related stress.

53. The high levels of stress ultimately led to the employee's constructive discharge.

54. As the Human Relations Director, Ms. Peppelman repeatedly asked the owners to meet to discuss ways to reduce the employee's stress in order to retain the employee.

55. However, the owners refused, telling Ms. Peppelman that they wanted the employee to leave.

56. Notably, the female employee had raised similar concerns to Ms. Peppelman regarding proper and ethical conduct of business.

57. During her employment, Ms. Peppelman also observed that MoreVent/Christian consistently devalued female employees and treated male employees more favorably than female employees like Ms. Peppelman.

58. MoreVent/Christian was dominated by male employees and its leadership

workforce was particularly non-diverse.

59. Shortly after Ms. Peppelman began her employment at MoreVent/Christian, she began experiencing blatant discrimination on the basis of her sex.

60. Several male owners, operators, and managers employed by MoreVent/Christian began undermining Ms. Peppelman and her position, actively interfering with Ms. Peppelman's ability to carry out her responsibilities and shutting her out of operations.

61. The male owners of MoreVent/Christian would give Ms. Peppelman tasks, often conflicting one another when doing so, and ask her to obtain information from other employees to complete the task.

62. However, when Ms. Peppelman would email her coworkers to obtain the requested information, the employees would fail to respond to her emails.

63. Ms. Peppelman regularly alerted the owners to the complete lack of cooperation from her male coworkers, and how it was making it harder for her to do her job, but there was no effort from the owners to address the issue.

64. MoreVent/Christian also subjected Ms. Peppelman to differential treatment from male employees, asking other male employees to confirm that Ms. Peppelman completed tasks.

65. MoreVent/Christian never questioned its male managers about whether or not they finished tasks.

66. The male leadership staff of MoreVent/Christian would systematically exclude Ms. Peppelman from meetings; withhold information about company news, changes, and policies; and refuse to accept input from her on human resources matters.

67. By way of example, MoreVent/Christian holds meetings called "START, STOP, KEEP" ("SSK") where employees can provide feedback on what they would like MoreVent/Christian to start, stop, or keep doing.

68. Among Ms. Peppelman's responsibilities as the HR Director were to manage personnel files, lead and participate in employee goal setting and feedback process, be an advocate for each individual employee's advancement, and create a plan addressing employee issues to support the growth of MoreVent/Christian.

69. Despite the fact that these SSK meetings directly relate to Ms. Peppelman's work, Ms. Peppelman was never informed about the meetings.

70. When Ms. Peppelman did learn that MoreVent/Christian was holding these meetings without her present, she requested that she be permitted to attend.

71. MoreVent/Christian responded that human resources did not belong in those meetings and prohibited her from attending.

72. Ms. Peppelman then requested that she be given the notes from the meetings so that she could review them and keep them in the employee files.

73. MoreVent/Christian once again refused, telling Ms. Peppelman that it was not her business to keep them.

74. Ms. Peppelman expressed that they are part of the employee files and she should be aware of any issues that arise out of the meetings.

75. MoreVent/Christian then said that it would review the notes with Ms. Peppelman.

76. Ms. Peppelman followed up every week to request the notes from the meetings.

77. However, with the exception of one occasion, she was not provided with the notes.

78. On Monday, November 16, 2020, Ms. Peppelman informed one of the male owners that new COVID-19 regulations were being released and that MoreVent/Christian would need to send an updated memo to all employees about the policies.

79. The owner asked Ms. Peppelman to send an email on the new guidelines and how they should be implemented for MoreVent/Christian.

80. He informed Ms. Peppelman that they would meet the next day to put the memo together.

81. The owner also asked Ms. Peppelman to obtain from his marketing manager and controller all COVID-19 memos and information from across MoreVent/Christian affiliates.

82. That same day, Ms. Peppelman sent an email to the owner outlining the guidelines and her feedback, and asked when they would meet to discuss the development of the memo.

83. Ms. Peppelman also sent emails to the marketing manager and controller in order to obtain the information as requested.

84. The next day, Ms. Peppelman received emails from the owner and the marketing manager demanding extra tasks from her, but as usual, providing no substantive response to her email.

85. Ms. Peppelman responded with the information requested and asked for a response to her email on the COVID-19 guidelines.

86. She also informed the owner that the other employees she had contacted

had not responded to her emails with the necessary information.

87. On Wednesday, November 18, 2020, Ms. Peppelman met with the male owner who told Ms. Peppelman that he had already taken care of the COVID-19 memo.

88. Ms. Peppelman reminded him that he had tasked her with putting the memo together and the plan had been for them to discuss the memo together.

89. However, the owner simply said that the attorneys were handling the memo and that she would get hers on Friday.

90. Ms. Peppelman told the owner that she needed open communication and timely responses from her supervisors and that she was not sure if she could work at MoreVent/Christian if they continued to keep her out of conversations and prevent her from doing her job.

91. The owner responded by telling Ms. Peppelman, "Fine, make your last day effective today, pack up your things, and get out of here!"

92. Ms. Peppelman reminded the owner that there were numerous pending tasks with the acquisition of the company and her leaving would pose an issue.

93. The owner yelled at Ms. Peppelman to "leave now!" and terminated her employment.

94. Defendants' termination of Ms. Peppelman is highly suspicious given its close proximity in time to her objecting and refusing to engage in MoreVent/Christian's illegal conduct and/or wrongdoing.

95. Defendants' termination of Ms. Peppelman is further suspicious given that Ms. Peppelman was amply qualified for her position, had been performing excellently, and was never informed of any valid grounds for her termination.

96. In terminating Ms. Peppelman in retaliation for her refusal to go along with, and objection to the illegal activity and/or wrongdoing being condoned and engaged in by MoreVent/Christian, MoreVent/Christian wrongfully terminated Ms. Peppelman in violation of Pennsylvania public policy.

97. In terminating Ms. Peppelman in retaliation for her objecting to violations of the FLSA and opposing acts made illegal by the FLSA, Defendants violated the FLSA.

98. In discriminating and harassing Ms. Peppelman because of her sex, and in terminating Ms. Peppelman as a result of her sex, Defendants violated Title VII.

99. Ms. Peppelman has suffered significant financial losses, including lost wages and other benefits of employment, as a direct and proximate result of the actions and inactions of the Defendants.

100. As a result of the Defendants' conduct described herein, Ms. Peppelman has incurred a significant obligation for attorneys' fees and costs of bringing this action.

101. As a result of Defendants' conduct described herein, Ms. Peppelman has suffered and continues to suffer significant emotional distress.

102. Defendants and their agents acted with knowledge of, or in reckless disregard of the probability that their actions and inactions would cause Ms. Peppelman to suffer emotional distress.

## COUNT I
### Wrongful Termination

103. Plaintiff Brittany Peppelman repeats and incorporates by reference the allegations of all previous paragraphs as if fully set forth at length herein.

104. Ms. Peppelman opposed and refused to participate in unethical, illegal

13

and/or fraudulent activity engaged by Defendants, as alleged herein.

105. Defendants terminated Ms. Peppelman in retaliation for her discovery, reporting, opposition to and refusal to engage in unethical, fraudulent and/or illegal activity in violation of Pennsylvania public policy.

106. The illegal conduct that Ms. Peppelman objected to and refused to engage in included, without limitation, Defendants' violations of the Pennsylvania Minimum Wage Act, Fair Labor Standards Act, violation of state and federal safety protocols relating to the COVID-19 pandemic, and conflicts of interest regarding conflicts of interest and self-dealing relating to investment advice and Defendants' 401(k) plan.

107. The above-described conduct of Defendants, in terminating Ms. Peppelman, represents wrongful termination under the common law of the Commonwealth of Pennsylvania.

108. As the direct and proximate result of Defendants' wrongful termination of Ms. Peppelman in violation of Pennsylvania public policy, Plaintiff Brittany Peppelman has sustained loss of earnings, severe emotional and psychological distress, embarrassment and humiliation, damage to her personal and professional character and reputation, loss of self-esteem, loss of future earning power, as well as back pay, front pay, and interest due thereon, and has incurred attorneys' fees and costs.

## COUNT II
**Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e), <u>et seq.</u>**

109. Plaintiff repeats and incorporates by reference the allegations of all previous paragraphs as fully as though the same were set forth at length herein.

110. Based on the foregoing, Defendants MoreVent/Christian engaged in

unlawful employment practices in violation of Title VII.

111. In discriminating against and harassing Ms. Peppelman because of her sex, Defendants MoreVent/Christian violated Title VII.

112. Defendants' violations were intentional and willful.

113. Defendants' violations warrant the imposition of punitive damages.

114. As a direct result of the unlawful employment practices engaged in by Defendants, Plaintiff Brittany Peppelman has sustained loss of earnings, severe emotional and psychological distress, embarrassment and humiliation, damage to her personal and professional character and reputation, loss of self-esteem, loss of future earning power, as well as back pay, front pay, and interest due thereon, and has incurred attorneys' fees and costs.

115. Ms. Peppelman is now suffering and will continue to suffer irreparable harm and monetary damages as a result of Defendants' actions unless and until this Court grants the relief requested herein.

## COUNT III
**Fair Labor Standards Act, 29 U.S.C. §215(a)(3)**

116. Plaintiff repeats and incorporates by reference the allegations of all previous paragraphs as fully as though the same were set forth at length herein.

117. In terminating Ms. Peppelman and taking other actions against Ms. Peppelman in retaliation for her complaints about Defendant's illegal overtime practices, Defendants violated the Fair Labor Standards Act, 29 U.S.C. §215(a)(3).

118. Defendants discriminated against and terminated Ms. Peppelman in retaliation for her complaints and refusal to engage in Defendants' illegal overtime practices in violation of 29 U.S.C. §215(a)(3).

119. Defendants' violations of the FLSA were intentional and undertaken with malice or reckless indifference to Ms. Peppelman's federally protected rights.

120. Defendants' actions were malicious as they were taken with knowledge that they violated federal laws against retaliation.

121. Defendants' actions were taken with reckless indifference as they were taken with knowledge that they might violate federal laws against retaliation.

122. Said violations warrant the imposition of punitive damages.

123. As the direct and proximate result of Defendants' violations of the FLSA, Plaintiff has sustained a loss of earnings, severe emotional and psychological distress, loss of self-esteem, loss of future earning power, as well as back pay, front pay, and interest due thereon along with and/or in addition to the damages and losses set forth herein.

124. Ms. Peppelman is now suffering and will continue to suffer irreparable harm and monetary damages as a result of Defendants' actions unless and until this Court grants the relief requested herein.

## PRAYER FOR RELIEF

125. Plaintiff repeats and incorporates by reference the allegations of all previous paragraphs as fully as though the same were set forth at length herein.

**WHEREFORE**, Plaintiff Brittany Peppelman respectfully requests that this Court enter judgment in her favor and against Defendants and Order:

    a. Appropriate equitable relief;

    b. Defendants compensate Plaintiff with a rate of pay and other benefits and emoluments of employment to which she would have been entitled had she not been subjected to unlawful discrimination, harassment and retaliation;

c. Defendants compensate Plaintiff with the wages and other benefits and emoluments of employment lost because of its unlawful conduct;

d. Defendants pay Plaintiff punitive damages;

e. Defendants pay Plaintiff liquidated damages;

f. Defendants pay Plaintiff compensatory damages for future pecuniary losses, pain and suffering, inconvenience, mental anguish, loss of employment and other nonpecuniary losses as allowable;

g. Defendants pay Plaintiff's costs of bringing this action and her attorneys' fees;

h. Plaintiff be granted any and all other remedies available pursuant to Title VII, the FLSA, Pennsylvania common law and any other applicable laws; and

i. Such other and further relief as is deemed just and proper.

## **JURY DEMAND**

126.	Plaintiff hereby demands trial by jury as to all issues so triable.


							Respectfully submitted,

							BELL & BELL LLP


					By: _____
							Christopher A. Macey, Jr., Esq.
							Bell & Bell LLP
							1617 John F. Kennedy Boulevard
							Suite 1254
							Philadelphia, PA 19103
							(215) 569-2500

							*Attorneys for Plaintiff*
							*Brittany Peppelman*

Dated: August 13, 2021